IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CHERYL WILLIAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 15-0164-WS-N |
| | ) |
| WELLS FARGO HOME | ) |
| MORTGAGE, INC., et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER**

This matter is before the Court on the defendants' motions to dismiss. (Docs. 18, 20). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 18, 29, 32, 33), and the motions are ripe for resolution. After careful consideration, the Court concludes the motions to dismiss are due to be denied.

**BACKGROUND**

According to the amended complaint, (Doc. 17), defendant Federal National Mortgage Association ("Fannie Mae") owned the mortgage loan on the plaintiff's residence. Defendant Wells Fargo Home Mortgage, Inc. ("Wells Fargo") acted as loan servicer. When the loan fell into default, the mortgage was assigned to Wells Fargo, for the sole purpose of enabling Wells Fargo as servicer to conduct a foreclosure sale on Fannie Mae's behalf. Possession of the note was also transferred to Wells Fargo, for the same sole purpose. Fannie Mae purchased the property at foreclosure, in an amount that just satisfied the indebtedness, and received from Wells Fargo (acting on Fannie Mae's behalf) a foreclosure deed. Pursuant to the prior agreement of Fannie Mae and Wells Fargo, possession of the

note automatically reverted to Fannie Mae after the sale; despite temporarily parting with possession, Fannie Mae at all times remained owner of the note.

The plaintiff timely vacated the property and at all relevant times retained her statutory right of redemption. Within the redemption period, Fannie Mae sold the property to a third party for approximately $122,000 more than the plaintiff's indebtedness. The plaintiff brings this action to recover that excess, asserting five causes of action: (1) breach of the note; (2) breach of quasi-fiduciary duty; (3) money had and received; (4) unjust enrichment; and (5) constructive trust. (Doc. 17 at 6-9). The defendants[1] raise a single, global argument: lack of duty. (Doc. 18 at 6, 7, 8, 9, 11, 13, 14, 15, 17, 19; Doc. 32 at 2, 3, 4, 5).[2]

## DISCUSSION

In *Springer v. Baldwin County Federal Savings Bank*, 562 So. 2d 138 (Ala. 1989), the Alabama Supreme Court held that "a mortgagee who purchases the mortgaged property at a foreclosure sale and then resells it to a third party during the statutory redemption period is required to apply the profit (the sum realized by the mortgagee in excess of the amount it paid at foreclosure) to the reduction of the mortgagor's debt." *Id*. at 139. The defendants acknowledge *Springer* but argue it does not apply here for two reasons: (1) when Fannie Mae purchased the plaintiff's property, it was not the mortgagee; and (2) the plaintiff is not seeking a reduction of her debt but an affirmative recovery. (Doc. 18 at 12). The Court considers these arguments in reverse order.

"[A] mortgagee is, in a sense, a trustee for the mortgagor, and is charged with the 'duty of fairness and good faith in its execution to the end that the

---

[1] Wells Fargo has submitted no independent briefing but simply "joins in and adopts" Fannie Mae's briefing. (Doc. 20 at 1; Doc. 33 at 1).

[2] As to the first of these theories, the defendants argue there can be no breach of the note because "there is not one single provision within the Note relating to post-sale proceeds." (Doc. 17 at 9). Since the defendants have not submitted the note for inspection, they cannot obtain dismissal on this basis.

mortgagor's property may be disposed of to his pecuniary advantage *in the satisfaction of his debt*.'" *Springer*, 562 So. 2d at 139 (quoting *J.H. Morris, Inc. v. Indian Hills, Inc.*, 212 So. 2d 831, 843 (Ala. 1968) (emphasis added)). Thus, "[t]he mortgagee, as trustee for the mortgagor, is obligated to apply that profit realized after foreclosure and during the redemption period *to the reduction of the mortgagor's debt* …." *Id*. at 140. The defendants conclude from this language that when, as here, the debt has been satisfied, the mortgagee can have no further duty to the mortgagor. (Doc. 18 at 14-15). But *Springer* did not so cabin its rule, and other authorities on which it relied indicate the Alabama Supreme Court would extend *Springer* to require a mortgagee, upon a profitable sale within the redemption period, to remit to the mortgagor amounts in excess of the mortgage debt.

First, *Springer* did not itself limit a mortgagee's duty as the defendants wish, because *Springer* did not involve the mortgagee's resale of the mortgaged property for an amount in excess of the mortgage debt.[3] Thus, "[t]he issue" before the *Springer* Court was naturally framed as whether the mortgagee had a duty to apply its profit on resale "to the reduction of the mortgagor's debt." 562 So. 2d at 139. Since no more expansive issue was involved, the absence of a more expansive holding (extending to the present situation) is not significant; *Springer* leaves that question open.

Second, *Springer* recognized the existing rule that, "when mortgaged property is sold at a foreclosure sale '[t]he mortgagee becomes a trustee for the mortgagor as to the surplus received.'" 562 So. 2d at 140 (quoting *Bartlett v. Jenkins*, 105 So. 654, 655 (Ala. 1925)). Pursuant to that rule, "[w]hen property is sold at a foreclosure sale, conducted under the power of sale contained in a mortgage, at an amount greater than the indebtedness secured by the mortgage, the

---

[3] In *Springer*, the mortgagee purchased the property at foreclosure for $88,200, leaving a $20,885.76 deficiency. It then sold the property for $99,000, and the question presented was whether this $10,800 profit should have been offset against the deficiency. 562 So. 2d at 139.

mortgagee is liable to the mortgagor for the surplus." *Davis v. Huntsville Production Credit Association*, 481 So. 2d 1103, 1106 (Ala. 1985). The defendants concede that "Alabama law is replete with cases permitting the borrower to insist on receiving the 'surplus' realized by the mortgagee at a foreclosure sale." (Doc. 18 at 11).

These cases establish the following propositions: (1) when the mortgagee sells the property to a third party at a foreclosure sale, the mortgagor is entitled to the excess of the sales price over the debt; (2) when the mortgagee buys the property at a foreclosure sale and then sells the property to a third party at a higher price (within the redemption period), the mortgagor is entitled to a corresponding reduction in the deficiency; and (3) both these results derive from the mortgagee's status as trustee for the mortgagor.

As *Springer* illustrates, a mortgagee can purchase property at a foreclosure sale and resell it almost immediately. *See* 562 So. 2d at 139 (sale to third party occurred three days after foreclosure). The defendants struggle to explain why Alabama law would require the mortgagee/trustee to remit excess funds to the mortgagor when the excess arises at the foreclosure sale but not require the mortgagee/trustee to remit excess funds to the mortgagor when the excess arises at a resale immediately thereafter. All they can manage is a citation to *Johnny Ray Sports, Inc. v. Wachovia Bank*, 982 So. 2d 1067 (Ala. 2007), which held only that "a mortgagee that has purchased mortgaged property at a foreclosure sale has no duty to resell the property within the one-year statutory redemption period, even if the opportunity for such a sale is presented and even if the sale would extinguish the mortgagor's debt." *Id*. at 1076. The absence of a duty to sell, however, is a far cry from the absence of a duty (once the mortgagee elects to sell) to account for sale proceeds in excess of the debt – especially when the *Springer* Court has already imposed a duty to account for sale proceeds to reduce a deficiency.

The rules in *Springer*, *Davis* and *Barnett* address the duties of a "mortgagee." The defendants argue that, since Fannie Mae assigned the mortgage

4

to Wells Fargo, it was not a mortgagee but a "third-party purchaser" and therefore had no duty to the plaintiff mortgagor. (Doc. 18 at 7-9). Their implicit but unsupported assumption is that the Alabama rules discussed above hinge on labels rather than practical realities. The practical reality here is that Fannie Mae, by its own admission, has been "at all times the owner of the mortgage note," (Doc. 17 at 3), and thus the actual and intended beneficiary of the mortgage and underlying debt. The mortgage was not assigned to Wells Fargo in order to impart these benefits to Wells Fargo but so that Wells Fargo, for a fee, could foreclose for the benefit of Fannie Mae. Whether Fannie Mae employed this roundabout procedure in an effort to evade its duties under Alabama law is immaterial; what matters is that the defendants have failed to show that the Alabama Supreme Court would permit a mortgagee to shed its duties towards the mortgagor by the simple expedient of assigning its mortgage to another for the limited purpose of foreclosing, while retaining for itself all the accruing benefits.[4] The very fact that the mortgagee's duties are those of a "trustee" reflects a substantial judicial solicitude for the mortgagor's position, making it even less likely the state courts would approve of avoiding those duties so easily.[5]

---

[4] The defendants' sole authority is a lower court decision from Massachusetts, (Doc. 18 at 10), which would be irrelevant even if it were from Alabama, since it addressed only an attempt to require a defendant that had *never been* a mortgagee to satisfy the duties of a mortgagee.

The defendants appeal generally to public policy (encouraging property sales, keeping a "clear balance" of rights and duties), (Doc. 18 at 16-19), but they have not shown that the Alabama Supreme Court would deem these considerations more weighty than those it has expressed in the cases discussed in text.

[5] *Springer* was decided in 1989 and *Davis* in 1985, a simpler time when, it seems, mortgagees conducted their own foreclosure sales. There was thus no reason for those decisions to anticipate the procedural developments on display here.

## CONCLUSION

For the reasons set forth above, the defendants' motions to dismiss are **denied**.

DONE and ORDERED this 30th day of July, 2015.

                            s/ WILLIAM H. STEELE
                            CHIEF UNITED STATES DISTRICT JUDGE