IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CHERYL WILLIAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 15-0164-WS-N |
| | ) |
| WELLS FARGO HOME | ) |
| MORTGAGE, INC., et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER**

This matter is before the Court on: (1) the plaintiff's motion for partial summary judgment as to liability against defendant Federal National Mortgage Association ("Fannie Mae"), (Doc. 57); (2) the plaintiff's supplemental motion for summary judgment as to damages, (Doc. 71); and (3) Fannie Mae's motion for summary judgment. (Doc. 70). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 58, 63, 69, 70, 72, 74-78), and the motions are ripe for resolution. After careful consideration, the Court concludes that Fannie Mae's motion is due to be denied, the plaintiff's motion for partial summary judgment is due to be granted, and the plaintiff's motion for summary judgment is due to be granted in part and denied in part.[1]

**BACKGROUND**

According to the second amended complaint, (Doc. 54), Fannie Mae owned the mortgage loan on the plaintiff's residence and was the mortgagee. Defendant Wells Fargo Home Mortgage, Inc. ("Wells Fargo") acted as loan servicer. When the loan fell into default, the mortgage was assigned to Wells Fargo, for the sole

---

[1] Fannie Mae's request for oral argument, (Doc. 70 at 1), construed as a motion for such relief, is **denied**. Civil Local Rule 7(h).

purpose of enabling Wells Fargo as servicer to conduct a foreclosure sale on Fannie Mae's behalf. Possession of the note was also transferred to Wells Fargo, for the same sole purpose. Fannie Mae purchased the property at foreclosure, in an amount that just satisfied the indebtedness, and received from Wells Fargo (acting on Fannie Mae's behalf) a foreclosure deed. Pursuant to the prior agreement of Fannie Mae and Wells Fargo, possession of the note automatically reverted to Fannie Mae after the sale; despite temporarily parting with possession, Fannie Mae at all times remained mortgagee and owner of the note.

The plaintiff timely vacated the property and at all relevant times retained her statutory right of redemption. Within the redemption period, Fannie Mae sold the property to a third party for approximately $124,000 more than the plaintiff's indebtedness. The plaintiff brings this action to recover that excess, asserting five causes of action: (1) breach of the note and/or mortgage; (2) breach of quasi-fiduciary duty; (3) money had and received; (4) unjust enrichment; and (5) constructive trust. (Doc. 17 at 6-9).

Fannie Mae moved to dismiss,[2] arguing that, under Alabama law, a mortgagee that purchases mortgaged property at a foreclosure sale for the amount of the mortgage debt and then resells it to a third party during the statutory redemption period for an amount exceeding the mortgage debt has no duty to remit the excess to the mortgagor. Fannie Mae also argued that, even if such a duty exists, it was not the mortgagee when the foreclosure sale occurred. (Doc. 18). The Court denied the motion. It first concluded that "the Alabama Supreme Court would … require a mortgagee to deliver to its mortgagor the excess over indebtedness received at a resale within the redemption period." (Doc. 48 at 2). The Court also expressed skepticism that the Alabama Supreme Court "would permit a mortgagee to shed its duties towards the mortgagor by the simple

---

[2] Fannie Mae moved to dismiss the first amended complaint, (Doc. 17), which was substantively equivalent to the second amended complaint filed after Fannie Mae's motion was denied.

expedient of assigning its mortgage to another for the limited purpose of foreclosing, while retaining for itself all the accruing benefits." (Doc. 34 at 5).

On their respective motions for summary judgment, the plaintiff seeks to confirm these rulings, while Fannie Mae seeks to undo them. The plaintiff also seeks judgment in his favor on each of his causes of action, along with an award of damages.

## DISCUSSION

Summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). The moving party may meet its burden in either of two ways: (1) by "negating an element of the non-moving party's claim"; or (2) by "point[ing] to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden." *Id*. "Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Id.*; accord *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000); *Sammons v. Taylor*, 967 F.2d 1533, 1538 (11th Cir. 1992).

"When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial. [citation omitted] In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof, no reasonable jury could find for the nonmoving party." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc) (emphasis in original); *accord Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made." *Fitzpatrick*, 2 F.3d at 1116; *accord Mullins*, 228 F.3d at 1313; *Clark*, 929 F.2d at 608.

"If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick*, 2 F.3d at 1116. "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Clark*, 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted); *see also* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion ….").

In deciding a motion for summary judgment, "[t]he evidence, and all reasonable inferences, must be viewed in the light most favorable to the nonmovant …." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003).

There is no burden on the Court to identify unreferenced evidence supporting a party's position.[3] Accordingly, the Court limits its review to the exhibits, and to the specific portions of the exhibits, to which the parties have expressly cited. Likewise, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on

---

[3] Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."); *accord Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) ("The district court has discretion to go beyond the referenced portions of these [summary judgment] materials, but is not required to do so."). "[A]ppellate judges are not like pigs, hunting for truffles buried in briefs," and "[l]ikewise, district court judges are not required to ferret out delectable facts buried in a massive record …." *Chavez v. Secretary, Florida Department of Corrections*, 647 F.3d 1057, 1061 (11th Cir. 2011) (internal quotes omitted).

summary judgment," *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995), and the Court accordingly limits its review to those arguments the parties have expressly advanced.

**I. Liability.**

The parties agree that no material facts are in dispute and that the Court is presented only with pure questions of law.  (Doc. 58 at 1; Doc. 69 at 1; Doc. 70 at 1).  The questions are the same ones addressed on motion to dismiss.  Fannie Mae's argument is indistinguishable from the argument it asserted on motion to dismiss, and the Court rejects it for reasons stated in its orders denying the motion to dismiss and denying Fannie Mae's subsequent motion to certify a question to the Alabama Supreme Court.  (Docs. 34, 48).  The Court concludes that the Alabama Supreme Court would hold that a mortgagee purchasing mortgaged property at a foreclosure sale for the amount of the mortgage debt and then reselling the property to a third party during the statutory redemption period for an amount exceeding the mortgage debt must remit the excess to the mortgagor.  The Court further concludes that the Alabama Supreme Court would apply this rule to Fannie Mae under the circumstances presented here.  Fannie Mae's motion for summary judgment is therefore due to be denied.

The plaintiff seeks summary judgment as to liability on all five of his causes of action.  (Doc. 57).  As noted, Fannie Mae concedes both that there are no material issues of disputed fact relative to the plaintiff's motion and that the only issues of law to be decided on his motion are those addressed above.  (Doc. 69 at 1).  Fannie Mae thereby concedes that, given the resolution of those legal issues, the plaintiff is entitled to judgment as to liability on all five of his causes of action.  The plaintiff's motion for partial summary judgment as to liability is therefore due to be granted.

## II. Damages.

In his supplemental motion for summary judgment, the plaintiff turns to damages and requests an award of $113,862.03, plus prejudgment interest. (Doc. 71). Fannie Mae responds that any award must exclude prejudgment interest and the expenses of resale. (Doc. 75 at 1).

### A. Expenses of Resale.

In *Springer v. Baldwin County Federal Savings Bank*, 597 So. 2d 677 (Ala. 1992) ("*Springer II*"), the Alabama Supreme Court ruled that, for purposes of calculating the credit due a mortgagor from the mortgagee's profitable resale within the redemption period, the "ordinary and necessary expenses incurred" by the mortgagee in connection with the resale – including "expenses of advertising, selling, and conveying the property" – are to be excluded. *Id*. at 678. Though the mortgagee may act as a quasi-trustee over the property it purchased at the foreclosure sale, "we cannot conclude that he is a trustee at his own expense." *Id*. The Court agrees with Fannie Mae, (Doc. 75 at 5-6), that *Springer II* applies here; the plaintiff makes no argument to the contrary.

Instead, the plaintiff argues that Fannie Mae cannot take advantage of *Springer II* without filing either a counterclaim for, or an affirmative defense based on, setoff or recoupment. Since Fannie Mae did neither, the plaintiff concludes it is barred from subtracting its expenses of resale from the plaintiff's recovery. (Doc. 71 at 2 n.2; Doc. 72 at 2 n.1; Doc. 77 at 4-5).

The plaintiff, however, has not explained how *Springer II* implicates either setoff or recoupment, both of which concern amounts the plaintiff owes the defendant – in recoupment, on the same transaction made the basis of the complaint or on a closely related transaction; in setoff, on extrinsic transactions. *E.g., Ashe-Carson Co. v. Bonifay*, 41 So. 816, 817-18 (Ala. 1906); *Finish Line v. J.F. Pate & Associates Contractors, Inc.*, 90 So. 3d 749, 754 (Ala. Civ. App. 2012). Nothing in *Springer II* suggests that mortgagors owe mortgagees the

expenses of resale or that mortgagees must sue mortgagors to recover such amounts. On the contrary, the *Springer II* Court recognized that mortgagees must apply the profit on a resale within the redemption period to reduce the mortgagor's debt, and the question it answered was how to measure "profit" for purposes of quantifying the mortgagee's obligation. 597 So. 2d at 678 ("The issue now before this Court is whether the term 'profit' or 'sum realized' is to be determined with or without consideration of any expenses incurred from [resale].").

The parties have stipulated: (1) that the gross amount received on resale of the property was $380,000; (2) that the net proceeds of the resale were $349,408.86; and (3) that Fannie Mae incurred additional expenses related to the resale totaling $5,987.56. (Doc. 63 at 2). The parties also agree that the foreclosure sale price was $266,137.97 and that this represents a "full debt" sale, eliminating the total amount owed by the plaintiff at the time of foreclosure. (Doc. 71 at 2; Doc. 75 at 2). Because the ordinary and necessary expenses of resale are to be subtracted from the gross resale price in determining the profit for which Fannie Mae must account, and because the plaintiff makes no argument that any of the identified expenses are not ordinary or necessary, the plaintiff's damages are $77,283.33.

### B. Prejudgment Interest.

"All contracts, express or implied, for the payment of money, or other thing, or for the performance of any act or duty bear interest from the day such money, or thing, estimating it at its money value, should have been paid, or such act, estimating the compensation therefor in money, performed." Ala. Code § 8-8-8. The plaintiff seeks such interest under Counts One and Three (breach of note/mortgage and money had and received). (Doc. 71 at 2 n.3; Doc. 72 at 2; Doc. 77 at 2-3).

Fannie Mae asserts that any contract between the parties was extinguished by the full debt foreclosure, leaving nothing to support an award of interest. (Doc.

7

75 at 7). This argument comes too late since, as discussed in Part I, Fannie Mae previously (one month earlier) conceded there is no legal or factual obstacle to its liability on each of the plaintiff's claims other than the two legal issues Fannie Mae unsuccessfully advanced. (Doc. 69 at 1). Fannie Mae's repetition of its extinguishment argument in an unauthorized sur-reply brief, (Doc. 78 at 13-15), does not improve its position.[4]

The plaintiff seeks prejudgment at the rate of 6% per annum, running from the resale date of February 26, 2013. (Doc. 72 at 2). Fannie Mae offers no response to this figure or this date, which the Court therefore accepts. The Court calculates the resulting amount as $15,070.00.

## CONCLUSION

For the reasons set forth above, Fannie Mae's motion for summary judgment is **denied**, the plaintiff's motion for partial summary judgment as to liability is **granted**, and the plaintiff's motion for summary judgment as to damages is **granted in part**. The Court will by separate order enter final judgment in favor of the plaintiff in the amount of $92,353.33. To the extent the plaintiff seeks any higher recovery, his motion for summary judgment is **denied**.

DONE and ORDERED this 23rd day of May, 2016.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[4] Because Fannie Mae forfeited any argument that the plaintiff cannot establish liability on his contract claim, the Court need not consider whether a claim for money had and received constitutes a claim based on an implied contract for purposes of Section 8-8-8.